UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BARBARA K. HOWARD,  )
   Plaintiff,  )
     )
v.  )   Case No: 1:14-CV-4
     )   Collier/Carter
CAROLYN W. COLVIN,  )
Commissioner of Social Security,  )
   Defendant.  )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 14).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff is currently fifty-one (51) years old. She was forty-seven (47) years old at her alleged onset date, and she was forty-nine (49) years old when the ALJ Determination was issued. Plaintiff completed the 11th grade. (Tr. 216). The record indicates that she performed past relevant work as a cashier and a convenience store manager. (Tr. at 131).

## Applications for Benefits

Plaintiff filed an application for a period of disability and disability insurance benefits and supplemental security income on May 17, 2011, alleging an onset date of March 10, 2010. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held initially before Administrative Law Judge Michael Swan on July 19, 2012 in Chattanooga, Tennessee (Tr. 98). The ALJ issued an unfavorable decision on August 24, 2012. (Tr. 7-20). On October 23, 2012, Plaintiff appealed to the Appeals Council. (Tr. 6). The Appeals Council declined to review the claim and so notified the Plaintiff by letter dated December 3, 2013. (Tr. 1). Plaintiff has exhausted her administrative remedies and has timely filed a civil action in this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the

2

ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Sec'y of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). However, once the claimant makes a *prima facie* case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Sec'y, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Sec'y, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Sec'y, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since March 10, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3

3. The claimant has the following severe impairments: History of Encephalitis; Low Back Pain; Depression and Anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Additionally, the claimant can understand, remember, and carryout simple instructions; can make work-related judgments typically required for unskilled work; can respond appropriately to supervision, coworkers, and work situations; can have contact with the general public on an occasional basis and with supervisors and coworkers on a frequent basis; and can deal with changes in routine work setting on an infrequent basis. Furthermore, the claimant is limited to occasional postural activity, but no ladders, ropes, or scaffolds, and no balancing. The claimant should also avoid concentrated exposure to extreme heat or cold, vibration, pulmonary irritants, and hazards such as unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 14, 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a) 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-20).

## Statement of Issues Raised

I. Whether the Administrative Law Judge ("ALJ") Improperly Gave Less Weight to the Medical Opinion of Consultative Examiner, Dee M. Langford, Ed.D.

## Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 12-18), in Plaintiff's memorandum (Doc. 13, p. 2) and in the Commissioner's Memorandum (Doc 15, pp. 3-6). Rather than repeating those facts here I will make specific references to relevant portions in the analysis section which follows.

## Analysis

### The Consultative Psychologist's Opinion:

Plaintiff argues the ALJ failed to properly consider the opinion of the consultative psychological examiner. Plaintiff underwent a consultative psychological examination by Dee M. Langford, Ed.D., H.S.P. on September 7, 2011 (Tr. 237-241). Plaintiff alleged disability due to vision problems, heart problems, balance problems, and back problems in her disability report (Tr. 133).

The Commissioner first points to the fact that Plaintiff had never received any inpatient or outpatient treatment for mental health problems (Tr. 239) and then turns to the details of the

5

Case 1:14-cv-00004-CLC-WBC   Document 16   Filed 12/17/14   Page 5 of 14   PageID #: 357

examination.

During her examination with Dr. Langford, Plaintiff maintained good eye contact (Tr. 238). Her rate, clarity, and volume of speech were normal (Tr. 238). Her mood was depressed and anxious and her affect was blunted, but she described her mood during the past month as "satisfied" (Tr. 239-40). She had crying spells a few times each week, and described her "bad days" as "sad" (Tr. 239). She was oriented to place and time (Tr. 239). Her thought processes were clear and logical and her responses were coherent and easy to understand (Tr. 239). She could immediately recall three out of three named items and again recall them after a three-minute duration (Tr. 239). She stated she had some problems with her short-term memory, but she performed all iterations of serial 3s successfully, performed well in the digit span tasks, and could spell the word "world" backwards correctly (Tr. 239). Plaintiff told Dr. Langford that she did not like to concentrate because it hurt her head and felt like her "ears are exploding" (Tr. 239). She stated that the base of her head had always hurt since she had encephalitis at age 13 (Tr. 238-39). She correctly recalled both her date of birth and her Social Security number (Tr. 239). She easily named four Presidents during her lifetime and five large United States cities (Tr. 239). She knew how many weeks and months were in a year (Tr. 239). She appeared to be able to follow instructions, both written and spoken (Tr. 239). She could name common objects such as an ink pen and a watch (Tr. 239). She showed good use of basic vocabulary and good basic math skills and a fair capacity for abstract thinking and understanding (Tr. 239). Dr. Langford observed Plaintiff to be cooperative, pleasant, candid, and anxious (Tr. 240). Throughout the interview, she showed no evidence of malingering and gave a concerted effort (Tr. 240). She correctly identified the shape of a ball, the colors of the

6

American flag, and the current President of the United States (Tr. 240). In describing her daily activities, Plaintiff stated that she ate, used a computer, washed clothes, cleaned the house, watched television, walked and went out with her son (Tr. 240). She managed her finances and medications with little or no difficulty (Tr. 240). She could prepare meals, wash dishes, vacuum, sweep, and do the laundry (Tr. 240). She sewed, cooked, and used to ride a bike (Tr. 240). She reported that she had quit her job after her triple by-pass surgery in 2010 because she could no longer think or concentrate (Tr. 240).

Dr. Langford stated that Plaintiff appeared to be a good historian and may fall into the average range of intellectual functioning (Tr. 239-40). She showed evidence of mild to moderate impairment in her short-term memory, none to mild impairment in her long-term and remote memory functioning, and moderate to marked impairment in her ability to sustain concentration (Tr. 239-40). Although her psychiatric state was depressed and somewhat anxious, Dr. Langford noted that Plaintiff tried to be content (Tr. 241). She showed evidence of a mild impairment in her social relating and appeared to be moderately impaired in her ability to adapt to change (Tr. 241). She could follow instructions, both written and spoken (Tr. 241). She may have some cognitive deficits due to the encephalitis and her recent triple by-pass surgery (Tr. 241). Dr. Langford diagnosed depressive disorder, not otherwise specified and generalized anxiety disorder (Tr. 241). She noted Plaintiff's history of encephalitis and triple by-pass surgery, balance issues, and lack of visual convergence (Tr. 241). She also noted that Plaintiff had

7

difficulties with her finances, employment, housing, and health issues (Tr. 241). She assessed a global assessment of functioning (GAF) score of 45[1] (Tr. 241).

Following her evaluation of Plaintiff, Dr. Langford completed a mental medical source statement of Plaintiff's ability to do work-related activities (Tr. 242-43). She stated that as a result of Plaintiff's encephalitis and by-pass surgery, Plaintiff may have cognitive limitations that resulted in moderate to marked limitations in her ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; and respond appropriately to usual work situations and to changes in a routine work setting. The range assessed was moderate to marked (Tr. 242-43).

There was also other evidence in the record, which included an evaluation of Edward Sachs, Ph.D., a non-examining State agency psychological consultant, who reviewed Plaintiff's claim for benefits, including reports Plaintiff submitted in support of her application and Dr. Langford's evaluation (Tr. 245-57). He opined Plaintiff had mild restrictions in activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 255). He noted that marked limitations were not supported by any objective findings and the medical and functional evidence supported no more than moderate psychological limitations (Tr. 257). Dr. Sachs completed a mental RFC assessment evaluating Plaintiff's ability to perform basic work activities and opined that Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain

---

1 A GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Rev. 2000) (DSM-IV-TR). A GAF of 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. See DSM-IV-TR at 34.

attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting (Tr. 259-60). She had no marked limitations; the remainder of functional abilities were not significantly limited (Tr. 259-60).

Plaintiff argues Dr. Langford's diagnoses and mental assessments were consistent with her examination notes  The ALJ concluded otherwise. She also argues that he improperly considered that she worked puzzle books on a nightly basis, because he did not mention that she had to work slowly on the puzzle books. Finally, she contends that the ALJ improperly considered that she did not have any treatment for depression and anxiety because he never inquired as to why she had not received such treatment (Doc 13, Plaintiff's Memorandum at 6-7).

In his opinion, the ALJ specifically addressed the psychological consultative exam. He noted the following:

> On September 7, 2011, the claimant presented to Dee M. Langford, Ed.D., for an independent psychological consultative exam. Upon clinical interview and mental status examination, Dr. Langford observed that the claimant's psychiatric state was depressed and somewhat anxious and she diagnosed the claimant with depressive disorder, not otherwise specified (NOS), and generalized anxiety disorder. As to work related functioning, Dr. Langford opined that the claimant might fall in the average range of intellectual functioning. Dr. Langford further opined that the claimant showed evidence of mild to moderate impairment in her short-term memory and she showed evidence of moderate to marked impairment in her ability to sustain concentration. She showed no evidence of impairment in her long term and remote memory functioning. Additionally, the claimant showed evidence of a mild impairment in her social relating and she appeared to be moderately impaired in her ability to adapt to change. She was able to follow instructions, written and spoken, appeared to have had a stable work history and appeared able to handle finances (Exhibit 9F).

9

(Tr. 16).

The ALJ then addressed the mental residual functional capacity of state agency consultant Edward Sachs, PhD., as follows:

> In a mental residual functional capacity assessment, dated September 13, 2011, State agency psychological consultant Edward Sachs, Ph.D., upon review of the medical record of evidence including findings from independent psychological consultant Dee M. Langford, Ed.D, opined that the claimant could perform simple and low level detailed tasks over a full workweek; could interact regularly with the general public, supervisors and coworkers; and could adapt to gradual or infrequent changes (Exhibit 11F).

(Tr. 16).

After addressing these somewhat conflicting opinions, the ALJ turned to Plaintiff's daily activities:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In an adult function report, dated May 25, 2011, the claimant indicated that she lived in a house alone. The claimant indicated no problems with personal care and that she did not need any reminders to care for personal needs or to take her medications. The claimant could prepare simple meals, preform laundry, make her bed, vacuum, wash dishes, and perform small house cleaning chores. As to getting around, the claimant indicated that she rode in a car. The claimant stated that she did not drive because of residuals due to a history of encephalitis that affected concentration. The claimant further indicated that she shopped in stores for groceries and that she was able to pay bills, count change, and use a checkbook or money order. Hobbies and interest including completing puzzle books, which she did every night. Social activity consisted of communicating with a friend and visiting the grocery store on a regular basis, once per week (Exhibit 4E). A subsequent adult functional report, dated October 30, 2011, was incomplete (Exhibit 8E).
>
> The claimant has provided inconsistent information regarding activities of daily living. The claimant alleges difficulty with concentration, persistence or pace and that she cannot drive due to a lack of focus. However, she indicated that she was able to pay bills, count change, and use a checkbook or money order. Moreover, the claimant indicted (sic) that she worked puzzle books nightly, which demand a considerable amount of concentration and focus (Exhibit 4E).

10

(Tr. 17).

After specifically addressing the evidence related to her mental health condition, including the fact Plaintiff had no history of mental health diagnosis or treatment (Tr. 18), the ALJ explained why he gave less weight to the psychological consultant:

> Less weight was also given to the opinion of independent psychological consultant Dee Langford as to the claimant's "moderate to marked" limitation in concentration, persistence or pace. I find this inconsistent with the lack of any corroborating medial evidence that documents a history of treatment for depression or anxiety; inconsistent with findings from Dr. Langford's own mental status examination (Exhibit 9F); and inconsistent with the claimant's activities of daily living, specifically her ability to handle finances and her ability to work puzzle books on a nightly basis (Exhibit 4E).

(Tr. 18).

The weight afforded a physician's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative, as the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. §§ 404.1527(d), 404.1545, 404.1546(c), 416.927(d), 416.945, 4016.946(c); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *4-5 (1996).

Dr. Langford found that Plaintiff exhibited "moderate to marked" limitations in concentration, and the ALJ found that Plaintiff had moderate restrictions in concentration, persistence, and pace. As the Commissioner notes, his finding is within the range of limitation

11

opined by Dr. Langford. The ALJ's decision not to adopt the marked limitation in concentration does not require remand. Dr. Langford's opinion does not provide evidence that Plaintiff's impairments meet or equal the requirements of a listed impairment. See 20 C.F.R. part 404, subpart P, appendix 1, § 12.00. The ALJ was not bound by her findings; her opinion was not entitled to controlling weight, and her opinion alone does not constitute substantial evidence.[2] The ALJ had the duty to formulate the RFC based on his consideration of all of the evidence of record, and was not required to rely entirely on a particular physician's opinion as a basis for the RFC. See Rudd v. Comm'r of Soc. Sec., 531 Fed.Appx. 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (citation omitted).

I conclude the ALJ gave valid reasons for giving less weight to the psychological consultant. As the Commissioner notes, at her psychological consultative examination, Plaintiff told Dr. Langford that she used a computer, washed clothes, cleaned the house, watched television, walked and went out with her son (Tr. 240). She managed her finances and medications with little or no difficulty (Tr. 240). She could prepare meals, wash dishes, vacuum, sweep, and do the laundry (Tr. 240). She sewed, cooked, and used to ride a bike (Tr. 240). In her Function Report, Plaintiff stated that she did puzzle books every night (Tr. 153). When

---

2 See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (ALJs are not bound by any findings made by State agency medical or psychological consultants); Rudd v. Commissioner of Social Sec., 531 Fed.Appx. 719, 730 (6th Cir. 2013) (opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit).

Case 1:14-cv-00004-CLC-WBC Document 16 Filed 12/17/14 Page 12 of 14 PageID #: 364

asked how well she could perform her hobbies and interests, Plaintiff reported that she could perform them "[a]lright, slow but alright" (Tr. 153). The ALJ could reasonably consider Plaintiff's ability to complete puzzle books was inconsistent with the marked limitation in concentration found by Dr. Langford (Tr. 18). See Miller, 524 Fed.Appx. at 194 (6th Cir. 2013) (the marked limitation in mental functioning was inconsistent with the plaintiff's significant daily activities). Although he did not specifically note that Plaintiff reported completing the puzzle books slowly, I do not conclude that this requires either reversal or remand. The ALJ reasonably considered that Plaintiff's completion of puzzle books on a nightly basis was inconsistent with a marked limitation in concentration. Her statement that she completed them "slowly" does not undermine that finding, particularly as "slowly" refers to her pace, and not her concentration.

Further, in this case the RFC is arguably entirely consistent with Dr. Langford's opinion, that is at the lower range which she assessed. The ALJ reasonably explained why he gave less weight to Dr. Langford's opinion that Plaintiff had marked limitations in concentration.

## Conclusion

I conclude the ALJ applied the correct legal standards in evaluating Plaintiff's case. The Sixth Circuit recognizes substantial evidence must be based on the record as a whole. See Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. See Richardson v. Perales, 402 U.S. 389, 402 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues

differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole. See Warner, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

The administrative record as a whole contains substantial evidence to support a conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I CONCLUDE there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND[3]:

(1) The plaintiff's motion for judgment on the pleadings (Doc. 12) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 14) be GRANTED.

(3) The case be DISMISSED.

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).